**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

B.W., *individually and on behalf of all*
*others similarly situated*,

      Plaintiff,

v.               CIVIL ACTION NO.   2:26-cv-00064

HRB TAX GROUP, INC., and
H&R BLOCK SERVICES,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Notice of Removal* (Document 1), the *Plaintiff's Motion to Remand and For Costs and Fees* (Document 7), the *Memorandum in Support of Motion to Remand and For Costs and Fees* (Document 8), the *Plaintiff's Amended/Corrected Motion to Remand* (Document 9), the *Memorandum in Support of Motion to Remand and For Costs and Fees* (Document 10), the *Defendant's Response to Plaintiff's Motion to Remand* (Document 18), and the Plaintiff's *Reply in Support of Motion to Remand* (Document 19), as well as the *Complaint* (Document 1-1) and all exhibits.   For the reasons stated herein, the Court finds that the case should be remanded for lack of jurisdiction.

**FACTUAL ALLEGATIONS**

The Plaintiff, B.W., a resident of West Virginia, initiated this action in the Circuit Court of Kanawha County, West Virginia, on or about December 18, 2025.   He named as a defendant HRB

Tax Group, Inc.,[1] a Missouri corporation with its principal place of business in Kansas City, Missouri. The Defendant operates and regularly conducts business in West Virginia as a credit services organization providing tax services. The Defendant removed the matter to federal court on January 28, 2026.

The Plaintiff alleges that he and similarly situated individuals are customers who paid for the services of the Defendant. In providing those services, the Defendant collects and maintains personally identifiable information ("PII") of its customers, including names, social security numbers, dates of birth, financial account numbers, driver's license numbers, and other sensitive information. An employee of the Defendant improperly accessed its customers' PII and used such PII to generate commissions by fraudulently purchasing Aflac insurance policies.[2] The United States Postal Inspection Service conducted an investigation of this fraudulent scheme and informed the victims, including the Plaintiff, that their PII had been used as part of the scheme.[3]

The Plaintiff brought this action both individually and on behalf of a proposed class, which consists of "[a]ll West Virginia citizens whose personal information was used by Defendants' employee(s) to generate fictitious insurance policies identified by the United States Postal Inspection Services in its September 17, 2024 correspondence to Plaintiff." (Compl. at ¶ 37.) Excluded from this proposed class are "all persons who were customers of the Defendants' facilities whose Sensitive Information was stolen, breached, accessed, and/or transferred and who

---

[1] The Plaintiff also named H&R Block Services, which the Defendant indicates is the former corporate name of HRB Tax Group Inc., and that there is currently no entity operating under the name H&R Block Services.

[2] This employee was convicted after pleading guilty to this scheme and has agreed to pay $44,582.52 in restitution to Aflac. (Document 9-3 at 5.)

[3] There are inconsistencies in the complaint pertaining to the number of individuals whose PII was breached. For example, a couple paragraphs of the complaint assert that the breach involved "the information of hundreds of West Virginians" and that "the PII of hundreds of customers" was breached, (Compl. at ¶¶ 11, 14), while other paragraphs state that "[t]he data breach incident in this matter impacted approximately thousands of customers of the Defendants" and that the Defendants did not adequately protect the PII of "thousands" of its customers. (Compl. at ¶¶ 23, 34.)

are not citizens of the State of West Virginia." (*Id.* at ¶ 38.)  The exact number of class members is unknown to the Plaintiff.  Although the Plaintiff, in his complaint, states that the number of class members "is potentially around 35,100 individuals," (*Id.* at ¶ 39), this number is disputed, with the Plaintiff asserting that the class consists of approximately 350 individuals and that the "35,100" figure is a "scrivener error."  (Pl.'s Mem. at 13, 15.)

The Plaintiff asserts claims for violations of the West Virginia Consumer Credit and Protection Act (WVCCPA"), unjust enrichment, breach of confidentiality, and negligence, and seeks compensatory and/or punitive damages as well as equitable relief including restitution. (Compl. at 13-14.)

The Plaintiff stipulates that he is not seeking to recover an amount including equitable and inequitable relief, in excess of "$74,999.00 (inclusive of attorney fees and debt deletion) exclusive of interest and costs."  (Pl.'s Stip. at ¶ 4.)  He now moves to remand the case to the Circuit Court of Kanawha County based on the Court's lack of subject matter jurisdiction.

**STANDARD OF REVIEW**

*A.  CAFA*

The Class Action Fairness Act (CAFA) provides for federal jurisdiction in civil class action cases with an amount in controversy over $5,000,000, at least 100 class members, and diversity between at least one plaintiff and at least one defendant.  28 U.S.C. § 1332(d).  A defendant's notice of removal is held to the same pleading standards as a complaint and need not supply supporting evidence.  "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547,

3

553 (2014).   After a defendant's jurisdictional allegations have been challenged, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."   *Id.* at 553-54.   Contrary to the standard for removal and remand in diversity cases, "no antiremoval presumption attends cases invoking CAFA."   *Id.* at 554.   However, "as the party seeking removal, [the defendant] bears the burden of establishing federal jurisdiction."   *Lanham v. Nationstar Mortg., LLC*, 169 F. Supp. 3d 658, 660 (S.D.W. Va. 2016) (Johnston, J.).   "To meet its burden, [the defendant] must provide enough facts to allow a court to determine—not speculate—that it is more likely than not that the class action belongs in federal court."   *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 197 (4th Cir. 2017).

## B.   Diversity Jurisdiction

An action may be removed from state court to federal court if it is one over which the district court would have had original jurisdiction.   28 U.S.C. § 1441(a).[4]   If, however, a district court does not have original jurisdiction, the case must be remanded to the state court from which it was removed.   28 U.S.C. § 1447(c).   This Court has original jurisdiction of all civil actions between citizens of different states or between citizens of a state and citizens or subjects of a foreign state where the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.   28 U.S.C. § 1332(a)(1)-(2).   Generally, every defendant must be a citizen of

---

[4]    Section 1441 states in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

a state different from every plaintiff for complete diversity to exist. Diversity of citizenship must be established at the time of removal. *Higgins v. E.I. Dupont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir.1998).

Section 1446 provides the procedure by which a defendant may remove a case to a district court under Section 1441. Section 1446 requires that "[a] defendant or defendants desiring to remove any civil action from a State court shall file . . . a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Additionally, Section 1446 requires a defendant to file a notice of removal within thirty days after receipt of the initial pleading. It is the long-settled principle that the party seeking to adjudicate a matter in federal court, through removal, carries the burden of alleging in its notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter. *Strawn et al. v. AT &T Mobility, LLC et al.*, 530 F.3d 293, 296 (4th Cir. 2008); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.") (citation omitted). Accordingly, in this case, the removing defendant has the burden to show the existence of diversity jurisdiction by a preponderance of the evidence. *See White v. Chase Bank USA, NA.*, Civil Action No. 2:08-1370, 2009 WL 2762060, at *1 (S.D. W. Va. Aug. 26, 2009) (Faber, J.) (citing *McCoy v. Erie Insurance Co.*, 147 F.Supp.2d 481,488 (S.D. W. Va. 2001)). In deciding whether to remand, because removal by its nature infringes upon state sovereignty, this Court must "resolve all doubts about the propriety of removal in favor of retained state jurisdiction." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999).

**DISCUSSION**

The Plaintiff moves to remand asserting that the Defendant has not demonstrated that the amount in controversy is satisfied for purposes of jurisdiction under CAFA and § 1332.  For the reasons stated below, the Court finds that it lacks jurisdiction.

*A.  CAFA*

There is no dispute that there are at least 100 class members and that minimal diversity exists.  However, the parties dispute the amount in controversy, as well as the exact number of class members that should be utilized in calculating the amount in controversy.

The Plaintiff argues that the Complaint, when "'construed as a whole' and analyzed in tandem with evidence," demonstrates that the class size is not around 35,000, but rather, only around "350 (or less)."  (Pl.'s Reply at 9) (quoting *McCown v. NGS, Inc.*, No. 3:14-27719, 2015 WL 251489, at *4 (S.D. W. Va. Jan 16, 2015).)  Specifically, the Plaintiff asserts that the Complaint alleges that the class involves only "'hundreds of class members."  (*Id.*)  Additionally, he asserts that "[t]he Postal Inspector's letter notifying of the fictious insurance policies, the indictment, the class definition, the allegations in the complaint, the guilty plea, and virtually all of the available evidence, confirms that this case involves only a few hundred consumers."  (*Id.*)  The Plaintiff argues that the 35,100 figure is a "scrivener error," that inartful pleading does not confer jurisdiction and that the Defendant failed to supply evidence as to the proper number of class members, although the Defendant is in the better position to provide that number.  (Pl.'s Mem. at 17.)  He contends that the Defendant's calculations, including its calculations involving $14,239 in lifetime credit monitoring for each of the 350 class members and the calculations

relying on 20% of his capped stipulation amount, are arbitrary and speculative.  The Plaintiff, conducting his own calculations, asserts that the amount in controversy for purposes of CAFA is approximately $815,500.  Alternatively, the Plaintiff, relying on several cases involving much larger class sizes where courts found a lack of jurisdiction under CAFA, argues that even if this case did involve around 35,000 class members, jurisdiction would be doubtful.

The Defendant argues that as a matter of fundamental fairness and because jurisdiction is based on the Plaintiff's pleading at the time of removal, it and this Court "are entitled to rely on Plaintiff's allegations in the Complaint, which on its face establishes this Court's jurisdiction." (Def.'s Resp. at v, 6.)  It asserts that despite the Plaintiff's Complaint referencing "hundreds" of class members, it also references "thousands" and explicitly mentions that the class "consists of 'around 35,100 individuals.'"[5]  (*Id.* at 7, 10) (quoting Compl. at ¶ 39.)  The Defendant further argues that when multiplying the 35,100-member class by the $200 that the Plaintiff seeks to recover at a minimum for each class member for violations of the WVCCPA, more than $7,000,000 could be recovered for Count I.  It contends that the Plaintiff's reliance on other cases involving larger class sizes is misplaced because they do not change the fact that the Plaintiff's Complaint places more than $5,000,000 at issue.  Alternatively, the Defendant claims that CAFA's amount in controversy requirement would be satisfied for a class size with 350 members. The Defendant argues that because the Plaintiff's demand for credit monitoring includes no limit, it places at issue approximately $14,239 per class member,[6] which when combined with the

---

[5] The Defendant argues that the Plaintiff's reliance on *McCown* is not helpful because it confirms that the "Plaintiff's express, specific allegation that the class includes 35,100 individuals and its repeated other affirmative references to 'thousands of purportedly impacted customers 'are not to be treated as meaningless' and must be given 'reasonable meaning.'"  (Def.'s Resp. at 9) (quoting *McCown v. NGS, Inc.*, No. 3:14-27719, 2015 WL 251489, at *4 (S.D. W. Va. Jan 16, 2015).)

[6] The Defendant obtained this figure by taking the difference between an average life expectancy of 79 years and an age of 45 years, representing the average age of an American taxpayer, for a total of 34 years (or 408 months),

additional damages sought by the Complaint, exceeds $5,000,000. Additionally, it contends that because the Plaintiff stipulated that he does not seek relief in excess of $74,999, it is plausible that each class member's damages could exceed $74,999, and that if each class member sought "no more than 20% of Plaintiff's 'capped' damages amount, the CAFA amount in controversy requirement is still readily satisfied ((20% of $74,999) x 350 class members = $5.25 million)." (Not. of Rem. at 7.)

The Court finds that the Defendant has not satisfied its burden to demonstrate by a preponderance of the evidence that the amount in controversy is sufficient to establish jurisdiction under CAFA. The Defendant does not offer any evidence demonstrating that the class size is around 35,100 class members, but rather, relies solely on the assertion in the Plaintiff's complaint, which the Plaintiff calls a "scrivener error".[7] This number has been challenged and is not the only number referenced in the Complaint. Because the Defendant bears the burden, has not offered any evidence as to the class size, and likely "has better access to the relevant information," *Scott*, 865 F.3d at 197 (quoting *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d, 51 (1st Cir. 2009)), the Court finds the Defendant has failed to show that a class size of 35,100 should be considered when

---

multiplied by a cost of $34.90 per month for credit monitoring.

[7] The Defendant relies on several cases asserting that when considering a motion to remand, "jurisdiction must 'be determined according to the plaintiffs' pleading at the time of the petition for removal.'" (Def.'s Resp. at 6 (quoting *Pullman Co. v. Jenkings*, 305 U.S. 534, 537 (1939)).) However, although it is true that factual allegations in a complaint will be accepted as true when considering a motion to remand, given the inconsistencies surrounding the class size in the Plaintiff's complaint, the Court need not accept the 35,100 figure as the proper class size. *See Ford v. Washam*, No. 5:23-04719-MGL, 2024 WL 340788, at *1 (D. S.C. Jan. 30, 2024) ([W]hen considering a motion to remand, the Court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff."); *Buford v. Ocwen Loan Servicing, LLC*, No. 2:18cv154, 2018 WL 4365588, at *4 (E.D. Va. July 13, 2018) (explaining that "[w]hile it is true that a motion to remand is to be considered in light of the complaint as it existed at the time the removal petition was filed, this does not mean that the court is not to consider factual issues," but rather, "is to decide all issues of fact raised by a motion to remand" (quoting *Binkley v. Loughran*, 714 F.Supp. 776, 778 (M.D. N.C. 1989))); *cf. McCown v. NGS, Inc.*, No. 3:14-27719, 2015 WL 251489, at *4 (S.D. W. Va. Jan 16, 2015) (stating that "[w]ritten documents must be construed as a whole, effect being given, *if possible*, to all parts of the instrument," and that "[s]pecific words or clauses. . . are not to be treated as meaningless, or to be discarded, *if any reasonable meaning can be given to them*" (emphasis added) (internal quotations omitted)).

calculating the amount in controversy. *See id.* (stating that although the Plaintiff "is the master of his complaint," the Defendant "is the master of its notice of removal").

Nonetheless, the Defendant claims that the amount in controversy is satisfied even if it is based on a class size of 350. The Defendant asserts that CAFA's $5,000,000 threshold is easily met if an average of $14,239 is attributed to each class member for lifetime credit monitoring, in addition to other damages sought in the Complaint. However, the Defendant's $14,239 figure is highly speculative. To calculate that figure, the Defendant relies on information indicating that the average age of an American taxpayer is 45 and that the average life expectancy in the United States is 79, taking the difference of 34 years (or 408 months) and multiplying it by a cost of credit monitoring of $34.90 per month. Such a calculation is not based on concrete facts, but rather mere speculation about the average age of the class members and their average life expectancy. *See Hall v. Camden Dev., Inc.*, No. DKC 25-4101, 2026 WL 447379, at *2 (D. Md. Feb. 17, 2026) (explaining that "[t]he Fourth Circuit has specified that defendants cannot reach the amount in controversy requirement through speculative assumptions but must support their assumptions with any evidence" (citing *Bartnikowski v. NVR, Inc.*, 307 F.App'x 730, 734 (4th Cir. 2009))). The Defendant has not demonstrated by a preponderance that the $14,239 figure is at issue in this case, and therefore, the Court finds that it should not be considered in calculating the amount in controversy under CAFA.

The Defendant further asserts that based on the Plaintiff's stipulation and his allegation that his claims are representative of the putative class, "it is 'plausible' that 'an estimate of the amount that will be put at issue in the course of the litigation' will approximate or exceed $74,999.00 for each of the 350 class members," and that "even if each of the 350 alleged class

members seek no more than 20% of the Plaintiff's 'capped' damages amount, the CAFA amount in controversy requirement will still readily be satisfied." (Not. of Rem. at ¶¶ 31-32.) However, the Defendant offers no basis for this Court to conclude that 20% of the Plaintiff's capped stipulation amount (or $14,999) for each class member is at issue in this case. Therefore, those figures should not be considered for purposes of calculating the amount in controversy under CAFA. The Defendant has put forth no calculations, grounded in fact, sufficient to support this Court's jurisdiction under CAFA and has, therefore, not met its burden.

### B.  Diversity Jurisdiction

Because the Plaintiff has brought the claims individually as well as on behalf of the proposed class, the Court will consider whether diversity jurisdiction exists. The Plaintiff argues that the Defendant has not satisfied its burden to demonstrate that the amount in controversy exceeds $75,000. Relying on *Gabe v. Dolgencorp, LLC*, No. 5:17-cv-04380, 2018 WL 4212417 (S.D. W. Va. Sept. 4, 2018) and *McDerment v. Synchrony Bank*, 2:24-cv-00508, 2024 WL 5096217 (S.D. W. Va. Dec. 12, 2024), the Plaintiff asserts that the Defendant has not offered any evidence demonstrating that the amount in controversy is satisfied and instead relies on inflated, conclusory, and speculative calculations. He contends the Defendant arbitrarily relies on his capped stipulation amount, arguing that such an amount is a cap on damages and not a monetary demand and therefore does not serve to "accurately calculate the amount in controversy." (Pl.'s Mem. at 11.) He contends that the Defendant's calculations indicating the Plaintiff has put nearly $15,500 at issue is incorrect because it is based on the Defendant's speculative credit monitoring figure. The Plaintiff also argues that the Defendant attempts to stretch the amount in controversy

10

by relying solely on speculative and inflated attorney's fees.   The Plaintiff, conducting his own calculations, asserts that the amount in controversy is only approximately $2,430.

The Defendant claims the amount in controversy is satisfied.   It argues that "[a]ccording to Plaintiff's own estimations and judicially noticeable facts, the Complaint alleges damages of at least $200 in Count I, up to $170 in Count II, up to $14,280 in Count III, and up to $500 in Count IV." (Def.'s Resp. at 15.)   The Defendant argues that with attorneys' fees, based on Plaintiff's attorneys' hourly rates of $1,141 and $948 which they sought to recover in a prior case in the District of Columbia, the amount in controversy would easily be satisfied even if the Plaintiff's attorneys spent "just 72 hours collectively on this case".   It argues that "their fee demand alone puts more than $75,000 at issue." (*Id.* at 15-16.)   Lastly, the Defendant, relying on *Riley v. Liberty Mut. Grp., Inc.*, 591 F.Supp.3d 29 (E.D. Va. 2022), asserts that "'[e]xperience and common sense' show it will cost more than $1.00 for H&R Block to comply with an order providing the relief demanded by the Plaintiff, which, added to the $74,999 capped sum Plaintiff has placed at issue in this litigation, satisfies the amount in controversy requirement for removal." (*Id.* at 18.)

The Court finds the Defendant has not met its burden to demonstrate by a preponderance of the evidence that this Court has jurisdiction under § 1332.   Assuming the Defendant's calculations are more than speculative, for purpose of determining this issue, those calculations do not demonstrate that the amount in controversy will exceed $75,000.[8]   Based on the Defendant's calculations that the Plaintiff will recover "at least $200 in Count I, up to $170 in Count II, up to

---

[8] The Court notes that the Defendant's calculations include an amount representing the cost of lifetime credit monitoring, which this Court previously determined is speculative.   However, because the amount in controversy will not exceed $75,000 even with the inclusion of this figure, the Court assumes for purposes of diversity jurisdiction that it is not speculative.

11

$14,280[9] in Count III, and up to $500 in Count IV," (Def.'s Resp. at 15), the total damages the Plaintiff could be expected to recover is $15,150.

Estimated attorneys' fees do not help satisfy the Defendant's burden here. The hourly rates proffered by the Defendant are inconsistent with rates in this District, and the Court will not adopt those rates for purposes of calculating the amount in controversy for jurisdiction. Without any evidence, any estimate of attorneys' fees at this stage is speculative. *See Bartnikowski*, 307 F.App'x. at 736 n.12.

The Defendant argues that in addition to the Plaintiff's capped stipulation amount of $74,999, it will cost the Defendant more than $1.00 to comply with the equitable relief sought in the Complaint. However, unlike the Plaintiff in *Riley v. Libert Mut. Grp., Inc*, the Plaintiff's stipulation amount is not a request for damages, but rather, a clarification of the maximum amount that he seeks to recover.[10] Moreover, the Defendant has not offered any evidence showing that the amount of damages at issue in this case is anywhere near $74,999,[11] nor has the Defendant offered any evidence of what it would reasonably cost for the Defendant to implement the equitable relief sought by the Plaintiff. As with CAFA jurisdiction, the Defendant has failed to meet its burden to establish diversity jurisdiction by a preponderance. The case must be remanded.

---

[9] The Court observes that it appears the Defendant's estimate for credit monitoring changed from $14,239 to $14,280 within its brief. (Def.'s Resp. at 12, 15.)

[10] In other words, even if this Court considered the Plaintiff's stipulated amount in determining the amount in controversy, it would construe it as clarifying the maximum amount that the Plaintiff could recover as opposed to a demand for damages. *See Young v. Sam's West, Inc.*, No. 2:22-cv-4414-RMG, 2023 WL 11885973, at *1 (D. S.C. Jan. 19, 2023) (finding that a "stipulation is a source of clarification that the amount in controversy does not exceed the jurisdictional amount"); *see also Thornhill v. McLane Foodservice, Inc.*, 816 F.Supp.3d 1006, 1011 (N.D. Cal. 2026) (explaining that "[t]he amount in controversy should not be confused with the defendant's 'likely or probable liability,'" but rather, "reflects the maximum recovery the plaintiff could reasonably recover"). Thus, such a stipulation does "not relieve the party seeking removal of its burden in providing jurisdiction." *Gabe v. Dolgencorp, LLC*, No. 5:17-cv-04380, 2018 WL 4212417, at *3 (S.D. W. Va. Sept. 4, 2018) (quoting *Caufield v. EMC Mortg. Corp.*, 803 F.Supp.2d 519, 527 (S.D. W. Va. 2011)).

[11] Quite the contrary, the calculations offered by the Defendant, even when including its speculative figure relating to the cost of credit monitoring, demonstrate that the amount in controversy is nowhere near $74,999.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Plaintiff's Amended/Corrected Motion to Remand* (Document 9) be **GRANTED** and that this case be **REMANDED** to the Circuit Court of Kanawha County, West Virginia. The Court further **ORDERS** that the *Plaintiff's Motion to Remand and For Costs and Fees* (Document 7) be **TERMINATED as moot**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Clerk of the Circuit Court of Kanawha County, to counsel of record, and to any unrepresented party.

ENTER:      July 1, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

13